## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ST. JOSEPH ABBEY and MARK COUDRAIN,<br><br>      Plaintiffs,<br><br>vs.<br><br>PAUL "WES" CASTILLE, OSCAR A. ROLLINS, BELVA M. PICHON, CRAIG G. GILL, ANDREW HAYES, WALL V. MCKNEELY, MARGARET SHEHEE, KELLY RUSH WILLIAMS, and LOUIS CHARBONNET, in their official capacities as Members of the Louisiana State Board of Embalmers and Funeral Directors,<br><br>      Defendants. | Civil Action No.<br><br>(Assigned to the Hon._____)<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

### Introduction

This lawsuit seeks to vindicate the freedom of the Benedictine monks of Saint Joseph Abbey to sell simple wooden caskets as part of their ministry and to raise funds for their monastery. Through the enforcement of arbitrary, excessive, and anachronistic occupational licensing laws and regulations, the State of Louisiana currently prohibits the monks from pursuing this work. The Louisiana State Board of Embalmers and Funeral Directors has ordered the Abbey to cease and desist from the sale of caskets (1) because neither the monks nor their

1

coworkers and employees are licensed funeral directors and (2) because the Abbey is not a licensed funeral establishment. These actions by the State Board deprive Plaintiffs in this suit of their right to pursue a lawful occupation protected by the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment to the United States Constitution.

## Jurisdiction and Venue

1.      Plaintiffs bring this civil rights lawsuit pursuant to the Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      Plaintiffs seek declaratory and injunctive relief against the enforcement of Louisiana's Embalming and Funeral Directors Act, La. Rev. Stat. Ann. § 37:831-:885, and the practices and policies of the Louisiana State Board of Embalmers and Funeral Directors that deny Plaintiffs the ability to operate a legitimate retail casket business.

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## Parties

5.      Plaintiff Saint Joseph Abbey ("the Abbey") is a Louisiana corporation and home to a monastery of Benedictine monks founded in 1889 near St. Benedict, Louisiana, just north of New Orleans across Lake Ponchartrain.

6.      The Abbey is not a licensed funeral establishment under Louisiana law. None of the monks at the Abbey, nor any of the Abbey's employees, is a licensed funeral director.

7.      Plaintiff Mark Coudrain is a United States citizen and a resident of Covington, Louisiana, in St. Tammany Parish. He is an ordained deacon of the Archdiocese of New Orleans

and is employed at the Abbey as the director of both the Christian Life Center and Saint Joseph Woodworks, which seeks to hand-make and sell monastic caskets to the general public. He is not a licensed funeral director under Louisiana law.

8.      Defendants Paul "Wes" Castille, Oscar A. Rollins, Belva M. Pichon, Craig G. Gill, Andrew Hayes, Wall V. McKneely, Margaret Shehee, Kelly Rush Williams, and Louis Charbonnet are members of the Louisiana State Board of Embalmers and Funeral Directors ("the State Board") and are sued in their official capacities.

## Factual Allegations

### What Is a Casket?

9.      A casket is just a box for human remains. It has a top, a bottom, sides, and usually some upholstery inside.

10.     A casket is not required for burial in Louisiana. A person can be buried directly in the ground or in a shroud.

11.     A casket is not required for burial in any state in the country.

12.     As evidenced by the fact that a casket is not necessary for burial, a casket does not serve any public health and safety purpose.

13.     Caskets can be made from wood, metal, or even cardboard.

14.     Some people make their own caskets or caskets for friends and loved ones.

15.     Do-it-yourself casket plans are readily available on the Internet.

16.     There is a growing environmental movement that advocates no caskets or biodegradable caskets such as cardboard caskets.

3

## The Casket Market

17.    In Louisiana, approximately 40,000 people die each year.  Roughly 400 funeral establishments in Louisiana handle arrangements for most of these deaths.  Nationwide, between 22,000 and 23,000 funeral establishments make arrangements for the approximately two million funerals conducted each year.

18.    As of 2007, the last year for which data is available, the national average cost of a funeral (not including a cemetery plot and grave marker) was $7,323.  For many families, a funeral is the third largest expenditure they will ever make after a home and a car.

19.    The casket accounts for the largest portion of these funeral costs.  The average casket price was $2,255 in 2007.  According to the Federal Trade Commission, the casket is "frequently the single most expensive item you may have to buy if you are planning a traditional funeral." Federal Trade Commission, *Caskets and Burial Vaults* (1996).  Caskets can often account for one-third to one-half of the total cost of funerals that include burials.

20.    Almost 75% of caskets are made of steel, which comes in different gauges. Higher gauge steel is lighter; lower gauge steel is heavier.  About 3% of all caskets are made of more expensive metals such as bronze or copper.

21.    Metal caskets range in price from $800 to over $10,000.

22.    Hardwood caskets of oak, walnut, cherry, and mahogany comprise about 15% of casket sales.  Less expensive woods, such as particle board and plain pine, account for less than 10% of all casket sales.  Wood caskets range in price from $400 to over $4,000.

23.    Nationally, independent casket retailers offer caskets at discounted prices.

24.    Federal law requires funeral homes to accept delivery of third-party caskets and not to charge extra for their use.  16 C.F.R. § 453.4(b).

## Saint Joseph Abbey and the Sale of Caskets

25.     Benedictine monks established a new monastery near Covington, Louisiana, in 1889. Elevated to abbey status in 1903, Saint Joseph Abbey is a Catholic monastery that for generations has trained the majority of the priests in southern Louisiana. As a Benedictine monastery, the monks follow the teachings of Saint Benedict of Nursia, a sixth-century Christian monk.

26.     This ancient tradition is encapsulated in the Benedictine motto "*ora et labora*" (prayer and work). The monastic life at Saint Joseph Abbey is one of liturgical prayer, the singing of psalms, simple labor, education, and hospitality toward those seeking a contemplative respite from the world.

27.     Saint Benedict instructed monastic communities to support themselves financially through the practice of common occupations. For centuries, Benedictine monks, and monks of other orders, have engaged in trades such as farming, brewing beer, and wine making.

28.     The Abbey is not wealthy and receives no support from the Catholic Church. In the past, the monks of the Abbey have farmed and harvested timber on their land. The monks were told by lay advisors in the late 1990s that they needed a new way to support themselves, but the monks were not sure what to do.

29.     On November 28, 1992, Bishop Stanley Ott of Baton Rouge died and was buried in one of the simple wooden caskets that the monks at the Abbey had been making for decades for themselves. Bishop Warren Boudreaux of Houma-Thibodaux was also buried in an Abbey casket when he died on October 6, 1997. These funerals led many people to inquire about buying Abbey caskets for their loved ones, and these requests kept coming through the early 2000s.

30.     The monks believed they had found a new opportunity to carry out their religious mission while also financially supporting the Abbey.  Casket-making is a simple occupation that could be performed at the monastery.  Handmade monastic caskets are a unique product for which there is a large domestic and interstate market and selling caskets enables the monks to share their view of the simplicity and unity of life and death.

31.     Monasteries in Indiana, Illinois, Iowa, and Minnesota are already in the casket business.

32.     Like entrepreneurs everywhere, the monks—who own everything communally— invested in themselves, converting an old cafeteria building on the Abbey's property into a well-equipped woodshop.

33.     The monks officially launched Saint Joseph Woodworks on All Saints Day, November 1, 2007.  The Abbey was offering its caskets for either $1,500 or $2,000, depending on the type, which is lower than the national average price of a casket.

34.     As a service to their customers, the Abbey will store a purchased casket at no charge for the customer.  This is a valuable service for customers who may not have room— because they live in a senior-citizens home, for example—to store a casket themselves.  In this situation, the Abbey is storing an already-built casket to which the customer holds title and can pick up any time.  This is not a situation in which the customer pays for a casket on a "pre-need" basis and the Abbey holds the money in trust until the customer dies and the Abbey then builds the casket.  The Abbey's services in this regard are nothing but free storage.

35.     The Clarion Herald, which is the official newspaper of the Archdiocese of New Orleans, ran an article about the new venture on October 27, 2007.

36.     The Clarion Herald article was noticed by the Louisiana State Board of Embalmers and Funeral Directors and some state-licensed funeral directors. On December 11, 2007—before the Abbey had sold its first casket—the State Board informed the Abbey that selling caskets violated the law and ordered it to immediately cease and desist from the direct sale of caskets or other funeral merchandise. *See* Exhibit 1.

37.     The first formal complaint against the Abbey was made on January 8, 2008, by Boyd L. Mothe, Jr., the vice president of Mothe Funeral Homes, a licensed funeral-home establishment in Louisiana. *See* Exhibit 2. Based on this complaint from a competitor, not a consumer, the State Board launched an investigation into the Abbey and one of its investigators questioned Abbot Justin Brown, who is the head of the Abbey, on January 30, 2008.

38.     During the January 30, 2008 questioning, Abbot Justin Brown, the head of the Abbey, took the position that the Abbey was not necessarily in agreement with the State Board's legal conclusions and, in any case, the monks, being nonconfrontational, were going to try to change the law so that they could carry out their chosen occupation.

39.     The monks went to their local state representative who agreed in May 2008 to introduce a bill amending the law to permit casket sales by nonlicensed funeral directors. The bill was assigned to the House Commerce Committee. Funeral-industry lobbyists opposed the bill and several funeral directors showed up at the hearing to register their disapproval. The bill died in committee.

40.     In spring 2010, a state senator also tried to sponsor a bill that would have exempted the monks, but that bill too died as a result of pressure from the funeral industry.

41.    On March 30, 2010, the State Board subpoenaed both Abbot Justin Brown and Deacon Mark Coudrain, commanding both of them to appear and answer allegations under oath about the Abbey's casket sales.

42.    In the subpoena, the State Board accuses the Abbey of violating several provisions of the funeral licensing requirements, including having individuals act as funeral directors without being licensed, operating a funeral establishment without a license, and illegally selling funeral merchandise on a "pre-need" basis by storing purchased caskets for customers at no charge.

43.    The subpoena states that, if found guilty, a party can be subject to fines between $500 and $2,500 for each casket illegally sold.

44.    A hearing on the subpoena before the State Board is currently scheduled for August 12, 2010.

<u>The Funeral-Industry Licensing Requirements</u>

45.    The relevant funeral-directing licensing requirements are found in Chapter 10 ("Embalming and Funeral Directors") of Title 37 ("Professions and Occupations") of the Louisiana Revised Statutes. The relevant regulations are found in Part XXXVII ("Embalmers and Funeral Directors") of Title 46 ("Professional and Occupational Standards") of the Louisiana Administrative Code.

46.    Pursuant to La. Rev. Stat. Ann. § 37:831(37), "Funeral directing" is defined as follows (emphasis added):

> the operation of a funeral home, or, by way of illustration and not limitation, any service whatsoever connected with the management of funerals, or the supervision of hearses or funeral cars, **the purchase of caskets or other funeral merchandise, and retail sale and display thereof,** the cleaning or dressing of dead human bodies for burial, and the performance or supervision of any service or act connected with the management of

funerals from time of death until the body or bodies are delivered to the cemetery, crematory, or other agent for the purpose of disposition.

47.     "Funeral merchandise" is further defined in the statutes as "caskets, rental caskets, rental casket inserts, alternative containers, combo/shipping caskets, and other receptacles, excluding urns, where human remains are directly placed for disposition." La. Rev. Stat. Ann. § 37:831(41).

48.     Under Louisiana law, "[n]o person, not certified and registered under the provisions of this Chapter, shall . . . conduct the business of funeral directing." La. Rev. Stat. Ann. § 37:848(A).

49.     Section 37:842(A) lists the requirements an applicant must meet in order to engage in the business of funeral directing within Louisiana:

> A. Any applicant shall be qualified for license as funeral director if he:
>
> (1) Is a resident of Louisiana, and twenty-one years of age, or at least eighteen years of age and legally emancipated.
>
> (2) Is found by the board to be of good moral character and temperate habits.
>
> (3) (a) Has successfully completed thirty semester hours in an accredited college or university, as recognized by the board and evidenced by a transcript of credits from such college or university.
>
> (b) Any intern duly registered with the board shall be required to have completed thirty semester hours in an accredited college or university, as recognized by the board and evidenced by a certified transcript of credits from such college or university.
>
> (4) Has served as an apprentice for a period of not less than one year in the State of Louisiana.
>
> (5) Has paid the application fee required by R.S. 37:845.
>
> (6) Passes satisfactorily an examination conducted by the board to practice the profession of funeral directing as defined in R.S. 37:831.

50. Regulations require the apprenticeship to be full time and the apprentice's primary form of employment. The apprentice must preside over at least 25 funerals during that year. La. Admin. Code tit. 46, § 903.

51. Regulations require the funeral-director exam to cover topics such as sociology, psychology, funeral directing, funeral-service law, Louisiana laws and regulations, and anything else the State Board deems relevant. La. Admin. Code tit. 46, § 503.

52. State-licensed funeral directors also have substantial ongoing continuing education requirements. La. Admin. Code tit. 46, § 709.

53. In addition to the requirements of becoming a licensed funeral director, Louisiana law also states that "[a]ny establishment where the business of funeral directing or embalming as defined in R.S. 37:831 is conducted within this state must be duly licensed." La. Rev. Stat. Ann. § 37:842(D). In order to become a licensed funeral establishment under this statutory section, an establishment must meet the following qualifications:

> (1) It is managed or to be managed by a funeral director holding a valid license from the state of Louisiana, who must manage the establishment on a full-time basis and funeral directing must be his principal occupation.
>
> (2) Embalming is performed only by a funeral director and embalmer holding a valid license from the state of Louisiana.
>
> (3) It is found, after proper investigation, to meet the requirements established by this board with respect to licensed personnel, interns, embalming facilities for the sanitation, disinfection, and preparation of a human body, adequate buildings, display rooms, furnishings, or equipment and other necessary facilities to adequately serve the public.
>
> (4) Furnishes such further information as the board may require regarding its qualifications and operations.
>
> (5) Makes payment to the board of the fee required by R.S. 37:845.
>
> *Id.*; *see also* La. Admin. Code tit. 46, §§ 1105 & 1107.

54.     Violations of any of the above-listed statutory provisions carry a fine between $500 to $2,500 per violation and a jail sentence between 30 to 180 days per violation, as well as costs and attorneys' fees for the State Board.  La. Rev. Stat. Ann. § 37:850.

55.     The Louisiana State Board of Embalmers and Funeral Directors is charged with administering and implementing this statutory licensing system.  La. Rev. Stat. Ann. § 37:832. The State Board has nine members, appointed by the governor and subject to Senate confirmation, and each member serves a term of four years   La. Rev. Stat. Ann. § 37:832(A)(2). By law, four of the members must be licensed funeral directors, four must be licensed embalmers, and one must be a citizen above the age of sixty.  La. Rev. Stat. Ann. § 37:832(B)(1)(2).

56.     Louisiana does not require most sellers of other nonperishable goods to obtain specialized licenses.  For instance, no specialized license is required for the sale of clothing, computers, furniture, nonprescription medical supplies, or kitchen supplies.  Nor does Louisiana require other retailers to obtain licenses that are only tangentially related to the goods being sold, as it does for caskets.  For example, Louisiana does not require shoe salesmen to obtain podiatry licenses, or mattress salesmen to obtain chiropractic licenses.  For other retail occupations that do require a specialized license, there is a direct relationship between the good being sold and both the training required for the license and concerns about pubic health and safety with the underlying product.  For example, retail pharmacies must have a licensed pharmacist to sell prescription medication.  *See* La. Rev. Stat. Ann. § 40-973.

11

**Injury to Plaintiffs**

57.     On their face and as interpreted and enforced by Defendants, the applicable funeral-directing and funeral-establishment laws and regulations require individuals who sell caskets, but engage in no other activity related to funerals or funeral directing, to obtain a funeral-director license.  Hence, as a condition of selling caskets to the public, individuals must obtain hours of costly training in skills that are wholly unnecessary to the task of selling caskets, serve as a full-time apprentice in the funeral business, pass the funeral-director licensing exam, and be subject to continuing education requirements.

58.     Plaintiffs seek to offer high-quality but simple wooden caskets at prices lower than that of their competitors.  However, Plaintiffs cannot do so legally unless they obtain a funeral-director license from the State Board and unless the Abbey becomes licensed as a funeral establishment.

59.     Because they have not engaged in the required training or taken the required examination, the monks of Saint Joseph Abbey and Plaintiff Deacon Mark Coudrain cannot obtain a funeral-director license to lawfully market high-quality, handmade caskets to consumers in Louisiana and elsewhere.

60.     Because neither the monks of the Abbey nor Plaintiff Deacon Coudrain are licensed funeral directors, the Abbey cannot obtain a funeral-establishment license.  In addition to lacking licensed funeral directors, the Abbey also does not have "embalming facilities for the sanitation, disinfection, and preparation of a human body," as required to become a licensed funeral establishment.  La. Rev. Stat. Ann. § 37:842(D)(3).

61.    The State Board has unambiguously notified Plaintiffs through both a cease and desist order and a subpoena that should they attempt to sell caskets from the Abbey, they risk punishment, including fines, for each violation of the law.

62.    The current funeral-director and funeral-establishment licensing laws have the intent and effect of establishing and maintaining a cartel for the sale of caskets within Louisiana. These laws and practices are enforced by the State Board, which is composed primarily of practitioners within the regulated industry (eight out of the nine members of the State Board are licensed funeral directors and embalmers as required by La. Rev. Stat. Ann. § 37:832B(1)(2)).

63.    This anti-competitive cartel limits the lawful sale of caskets to those who provide all other funeral services, while preventing individuals who do not wish to provide funeral services from directly offering funeral goods for sale to the public.  The funeral-director and funeral-establishment licensing scheme erects excessive and unreasonable barriers to the most basic economic opportunities and serves no legitimate public health and safety interest.

64.    Based on information and belief, no customer has ever filed a consumer complaint or other grievance against the Abbey or Plaintiff Deacon Mark Coudrain.  The only parties that have complained about Plaintiffs' sale of caskets are their competitors—licensed members of the funeral industry.

65.    But for the State Board's enforcement of the law, Plaintiffs would immediately sell caskets to the public.

66.    Plaintiffs face a concrete threat of punishment from the State Board, including substantial fines, at a formal hearing the State Board intends to convene on August 12, 2010, where, according to the subpoenas issued to Abbot Justin Brown and Plaintiff Mark Coudrain, the State Board will determine if they are "guilty" of violating state funeral licensing laws and

regulations.  Louisiana law also subjects Plaintiffs to the State Board's costs and attorneys' fees should the State Board find them "guilty."  Plaintiffs are also subject to criminal prosecution under Louisiana law for the unlicensed sale of caskets and face up to 180 days in prison for each casket they sell in violation of the law.

67.     Plaintiffs are irreparably harmed by the arbitrary requirement that individuals such as Plaintiff Coudrain and the monks of the Abbey have to become licensed funeral directors to engage in the retail sale of caskets because there is no rational relationship between the retail sale of handmade monastic caskets and funeral-director licensure.  The irreparability and arbitrariness of the injury to Plaintiffs is illustrated in the state's expectation that the monks and deacon abandon their religious vocations in order to serve for one year as full-time apprentice funeral directors.  The retail sale of handmade monastic caskets is not rationally related to a year-long apprenticeship in funeral directing.

68.     Plaintiffs are irreparably harmed by the arbitrary requirement of having to convert the monastery into a licensed "funeral establishment," including outfitting the monastery with facilities for embalming human remains, because there is no rational relationship between the retail sale of handmade wooden caskets and a government requirement that a monastery become a funeral home.

69.     Plaintiffs are irreparably harmed by the arbitrary requirement of not being allowed to store purchased caskets for customers at no charge under Louisiana's "pre-need" laws because there is no rational relationship between the free storage of a wooden box on monastery property and the government interests supporting regulation of "pre-need" funeral-services contracts.

70.     Plaintiffs have invested thousands of dollars into Saint Joseph Woodworks and they continue to lose thousands of dollars each month because of their inability to sell or market their caskets legally. If Plaintiffs are prohibited from selling caskets, they will be forced to close Saint Joseph Woodworks in the near future and find some other means of providing much-needed funds for the support of the Abbey. If Plaintiffs are forced to close Saint Joseph Woodworks, they will suffer irreparable financial harm.

71.     Through the arbitrary acts of Defendants as listed above, Plaintiffs are injured irreparably by the past, present, and future deprivation of their substantive due-process right to earn an honest living free from arbitrary and irrational government interference, their right to the equal protection of the laws, and their right to the privileges or immunities of citizenship.

## Constitutional Violations

### First Claim for Relief
(Due Process)

72.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 71 of this Complaint as if fully set forth herein.

73.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects every American's right to pursue legitimate occupations, subject only to regulations that are rationally related to a legitimate government purpose.

74.     Louisiana's funeral-licensing laws and regulations violate Plaintiffs' right to due process of law under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 on their face and as-applied to the extent that Louisiana law requires individuals to be licensed funeral directors merely to engage in the retail sale of caskets, to the extent that Louisiana law requires entities to be licensed funeral establishments to engage in the retail sale of caskets, and

to the extent that Louisiana law requires the free storage of purchased caskets to comply with the requirements of a "pre-need" funeral-services contract.

75.     Unless Defendants are enjoined from committing the above-described constitutional violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

Second Claim for Relief
(Equal Protection)

76.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 75 of this Complaint as if fully set forth herein.

77.     By requiring the sellers of simple wooden caskets to comply with an arbitrary and irrelevant licensing scheme that is not rationally related to any legitimate public health and safety concerns, but is instead designed for another profession, Defendants, their agents, and employees are treating two distinct and different occupations as the same and therefore violate the rights of Plaintiffs to the equal protection of laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

78.     Unless Defendants are enjoined from committing the above-described constitutional violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

Third Claim for Relief
(Privileges or Immunities)

79.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 78 of this Complaint as if fully set forth herein.

80.    Louisiana's funeral-licensing laws and regulations violate Plaintiffs' privileges or immunities of citizenship under the Fourteenth Amendment to U.S. Constitution and 42 U.S.C. § 1983 on their face and as-applied to the extent that Louisiana law requires individuals to be licensed funeral directors merely to engage in the retail sale of caskets, to the extent that Louisiana law requires entities to be licensed funeral establishments to engage in the retail sale of caskets, and to the extent that Louisiana law requires the free storage of purchased caskets to comply with the requirements of a "pre-need" funeral-services contract.

81.    Unless Defendants are enjoined from committing the above-described constitutional violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request relief as follows:

A.    For entry of judgment declaring that La. Rev. Stat. Ann. § 37:831(37) is unconstitutional on its face to the extent that it includes the selling of caskets within the definition of "funeral directing";

B.    For entry of judgment declaring that La. Rev. Stat. Ann. § 37:831(37) is unconstitutional as applied to Plaintiffs, who only sell caskets and engage in no other funeral-related activities;

C.    For entry of judgment declaring that § 37:831(41) is unconstitutional as applied to the selling of caskets and other funeral merchandise by one who is not a state-licensed funeral director;

D.    For entry of judgment declaring that La. Rev. Stat. Ann. §§ 37:842(A)-(C) and the practices of the State Board, as applied to Plaintiffs, are unconstitutional.

E.      For entry of judgment declaring that the free storage of purchased caskets on Abbey property does not subject Plaintiffs or their customers to the requirements of "pre-need" funeral services contracts as set forth in La. Rev. Stat. Ann. §§ 37:861-:885.

F.      For entry of permanent injunctions against all Defendants prohibiting enforcement of these regulations and policies in a manner that impairs the opportunities of Plaintiffs to operate their casket businesses, and prohibiting the imposition of fines or criminal penalties, or otherwise subjecting the aggrieved to harassment;

G.      For an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

H.      For such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted this 12th day of August, 2010.

**INSTITUTE FOR JUSTICE**
William H. Mellor[1]
Scott G. Bullock[2]
Jeff Rowes[3]
901 N. Glebe Road, Suite 900
Arlington, VA 22203
wmellor@ij.org, sbullock@ij.org,
jrowes@ij.org
P: 703-682-9320/F: 703-682-9321

**KOCH & SCHMIDT, L.L.C.**
F. Evans Schmidt
650 Poydras Street, Suite 2415
New Orleans, Louisiana 70130

Respectfully submitted,

**KOCH & SCHMIDT, L.L.C.**

/s/ _____
F. Evans Schmidt, La. Bar #21863
650 Poydras Street, Suite 2415
New Orleans, Louisiana 70130
feschmidt@kochschmidt.com
P: 504-208-9040/F: 504-208-9041

---

[1] Motion for Admission *Pro Hac Vice* to be filed.
[2] Motion for Admission *Pro Hac Vice* to be filed.
[3] Motion for Admission *Pro Hac Vice* to be filed.