UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ST. JOSEPH ABBEY, ET AL.                                              CIVIL ACTION

VERSUS                                                                      NO. 10-2717

PAUL "WES" CASTILLE, ET AL.                                      SECTION "K"(5)

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came to trial on June 6, 2011. Before the Court was the issue of whether it is unconstitutional to require those persons who intend solely to manufacture and sell caskets be subject to the licensing requirements for funeral directors and funeral establishments. After considering all testimony and evidence presented at trial and the relevant law, the Court finds that this requirement is in contravention of the Due Process Clause and the Equal Protection Clause of the United States Constitution. There is no rational basis for the State of Louisiana to require persons who seek to enter into the retailing of caskets to undergo the training and expense necessary to comply with these rules. Simply put there is nothing in the licensing procedures that bestows any benefit to the public in the context of the retail sale of caskets. The license has no bearing on the manufacturing and sale of coffins. It appears that the sole reason for these laws is the economic protection of the funeral industry which reason the Court has previously found not to be a valid government interest standing alone to provide a constitutionally valid reason for these provisions.

The rationale for these findings follows herein. To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such. To the extent a conclusion of law constitutes a finding of fact, the Court adopts it as such.

**Procedural Background**

As this Court has previously noted, St. Joseph Abbey and Mark Coudrain (Plaintiffs) filed the instant suit against Paul "Wes" Castille, Oscar A. Rollins, Belva M. Pichon, Craig G. Gill, Andrew Hayes, Wall V. McKneely, Margaret Shehee, Kelly Rush Williams, and Louis Charbonnet, in their official capacities as members of the Louisiana State Board of Embalmers and Funeral Directors (Defendants or EFD Board).  Plaintiffs seek declaratory and injunctive relief pursuant to the Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201. (Complaint, ¶ 1).   At the heart of the dispute is the desire of  Benedictine monks of Saint Joseph Abbey to sell wooden caskets without the threat of prosecution or fines.

Plaintiffs seek declaratory relief against the enforcement of Louisiana's Embalming and Funeral Directors Act, La. Rev. Stat. Ann. § 37:831-:885 ("the Act"), and the practices and policies of the EFD Board which deny Plaintiffs the ability to sell caskets at retail prices to the public without being licensed as required under the Act.  It is undisputed that Mark Coudrain ("Coudrain") is an ordained deacon of the Archdiocese of New Orleans and is employed at the Abbey as the director of both the Christian Life Center and Saint Joseph Woodworks which entity seeks to hand-make and sell monastic caskets to the general public.  He is not a licensed funeral director under Louisiana Law.

Plaintiffs contend that Louisiana's funeral-licensing laws and regulations violate Plaintiffs' constitutional rights to Due Process in that:

> 74.     Louisiana's Funeral-licensing laws and regulations violate Plaintiffs' right to due process of the law under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §1983 on their face and as-applied to the extent that Louisiana law requires individuals to be licensed funeral directors merely to

>  engage in the retail sale of caskets, to the extent that Louisiana law requires entities to be licensed funeral establishments to engage in the retail sale of caskets, and to the extent that Louisiana law requires the free storage of purchased caskets to comply with the requirements of a "pre-need" funeral-services contract.[1]

(Complaint, ¶74).  And with respect to the violation of the Equal Protection Clause, Plaintiffs allege:

> 77.  By requiring the sellers of simple wooden caskets to comply with an arbitrary and irrelevant licensing scheme that is not rationally related to any legitimate public health and safety concerns, but is instead designed for another profession, Defendants, their agents, and employees are treating two distinct and different occupations as the same and therefore violate the rights of Plaintiffs to equal protection of laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

(Complaint, ¶ 77).[2]

These allegations arise from the terms of the Act under which it is unlawful for anyone to conduct the business of funeral directing or to engage in the business of funeral directing as defined in La. Rev. Stat. 37:831 unless such business is conducted by a duly licensed funeral establishment.  La. Rev. Stat. 37:848 (A) and (C).  "Funeral directing" is defined in relevant part as "the operation of a funeral home, or, by way of illustration and not limitation, any service whatsoever connected with the management of funerals, or the supervision of hearses or funeral cars, the **purchase of caskets or other funeral merchandise**, **and retail sale and display thereof,** . . . ." La. Rev. Stat. 37: 831(35) (emphasis added).  "Funeral establishment" is defined as "any place or premises duly licensed by the board and devoted to or used in the care and

---

[1] At trial, the parties stipulated that Plaintiffs do not challenge "pre-need requirements" contained in the law as unconstitutional. (Trial Transcript. at 46).

[2] It should be noted that Plaintiffs also brought a Privileges or Immunities Claim; however, they have conceded that this claim is foreclosed by the *Slaughter-House Cases*, 18 U.S. (16 Wall) 36 (1873) and that they raised and argued this claim in order to preserve it for appeal.

3

preparation for burial of the body of a deceased person or maintained or held out to the public by advertising or otherwise as the office or place for the practice of funeral directing." La. Rev. Stat. 37:831(37).

Prior to trial, Plaintiffs filed a Motion for Preliminary Injunction and Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(6). On April 8, 2011, the Court issued its Order and Reasons denying Defendants' motion and setting the Motion for Preliminary Injunction for hearing at the time of trial on the permanent injunction. (Rec. Doc. 59). Defendants moved for dismissal based on the legal issue of whether protecting a discrete interest group from economic competition constitutes a sufficient legitimate government purpose such that Plaintiffs failed to state a claim upon which relief could be granted under the Due Process and Equal Protection clauses of the Fourteenth Amendment. Defendants argued that such protection is recognized as a sufficient legitimate government interest under the rational-basis test. *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). The Court rejected this approach finding that economic protectionism standing alone does not provide a *per se* rational basis to pass constitutional muster.

In doing so this Court, adopted the approach taken by the United States Court of Appeals for the Sixth Circuit in *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002). The Louisiana statute was not subject to "strict scrutiny" because it does not regulate a fundamental right or distinguish between people on the basis of suspect characteristics. *St. Joseph Abbey v. Castille*, 2011 WL 1361425, *4 (E.D.La. April 8, 2011). Likewise, the "intermediate scrutiny" approach as outlined in *J.E.B. V. Alabama*, 511 U.S. 127 (1994) was inapplicable because the subject statute does not concern classifications such as gender and illegitimacy which are considered less "suspect."

4

Thus, the Court in its ruling on the motion to dismiss found that Plaintiffs' allegations concerning the Act were found to be subject to a "rational basis" review which requires "only that the regulation bear some rational relation to a legitimate state interest. *St. Joseph Abbey* at *4 citing *Craigmiles,* 312 F.3d at 233 citing *Romer v. Evans*, 517 U.S. 620 , 632 (1996).[3]

*Craigmiles* noted that "[c]ourts repeatedly recognized the protecting of a discrete interest group from economic competition is not a legitimate governmental purpose." *Craigmiles*, 312 F.3d at 224 citing *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475, (1978) ("Thus, where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected.") *See also H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 537-38, 69 S. Ct. 657, 93 L.Ed. 865 (1949); *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) (distinguishing between legitimate state purposes and "providing a benefit to special interest"). Thus, the Court must now determine whether there is **any** rational government interest served by the Act as applied to Plaintiffs.

**Finding of Facts**

Saint Joseph Abbey is a Catholic monastery of 38 monks located in Covington, Louisiana. (Trial Transcript, at 14-15) ("T. T.") Plaintiff Mark Coudrain is a deacon of the Catholic Church and employee of the Abbey. (T.T. at 25). For generations, the monks

---

[3]While the Due Process Clause and the Equal Protection clauses provide different kinds of protections (Due Process protecting certain fundamental rights and liberty interest while regulation affects all equally, whereas Equal Protection insures the state treat all similarly situated similarly), the inquiry as to the constitutionality of such a statute collapses, and the rational basis review standard for the two are "in essence the same. *St. Joseph Abbey* at *5 and cases cited therein.

constructed simple wooden caskets to bury their dead. (T. T. 17). After two bishops utilized these simple coffins, public interest in the coffins grew. That factor combined with the loss of the Abbey's timberlands as a result of Hurricane Katrina (which timberlands it had harvested for income) led Abbot Justin Brown to believe that the construction and sale of caskets would be a good source of revenue for the Abbey. (Trial Trans. at 17).

The Abbey invested $200,000 in "Saint Joseph Woodworks." Coudrain manages the business supervising monks and volunteers. (T. T. at 13 and 25). Two styles of caskets are made. There is the "monastic" casket which is just a plain box with a flat lid and metal handles and which is 25 inches in width (T. T. at 33 and Plaintiffs' Exh. 3). There also is the "traditional" casket which has a raised lid and wooden handles which is 341/2 inches in width. (T.T. at 27 and Plaintiffs' Exh. 3). Both have standard interior dimensions. The monastic casket costs $1500 and the traditional casket costs $2000. (T.T. at 33). Saint Joseph Woodworks also makes oversized caskets in these same two styles. St. Joseph Abbey does not arrange funerals or participate in funerals other than in a pastoral role (T.T. at 18). In addition, it does not handle and does not intend to handle human remains. (T.T. at 18 and 34).

The Board is a licensing and regulatory board which is authorized and empowered under the provisions of La. Rev. Stat. 37:3831, *et seq.* to regulate funeral service professionals and funeral homes. It has oversight and can take appropriate actions against those who do not adhere to the regulations enacted with respect to the business of funeral directing. Thus, it is responsible for enforcing the laws that pertain to the regulation of the funeral industry as created by the Louisiana state legislature. These laws, as noted, provide that only state-licensed funeral directors may engage in the retail sale of caskets. La. Rev. Sta. § 37:831 (37). Furthermore, only

licensed funeral directors are allowed to retail caskets only at a state-licensed funeral establishment. La. Rev. Stat. 37: 842(D).  The penalty for each unlicensed casket sale is up to a $2500 fine and 180 days in jail.  La. Rev. Stat. § 37:850.  Thus, as a result of the Abbey's actions, on December 11, 2007, the State Board ordered the Abbey to cease and desist retailing caskets to the public and threatened penalties for its alleged violation of these statutes.

      To become a licensed funeral director, one must have a high school diploma or GED, pass 30 credit hours at an accredited college, and complete a one-year, full-time apprenticeship. (T.T. 51-52); La. Rev. Stat. § 37:842; La. Admin Code tit. 46, part XXXVII, § 903(3)-(5) (requiring employment to be full-time and the apprentice's "principal occupation").  None of the 30 credit hours need pertain to funeral directing, grief counseling or caskets. (T.T. at 51.  Nor is there any requirement that the apprentice learn about caskets or grief counseling.  (T.T. at 52). Finally, one must pass an exam administered by the International Conference of Funeral Service Examining Boards.  (T.T. at 52); La. Rev. Stat. § 37: 842; La. Admin. Code tit. 46, part XXXVII, § 503.  This exam does not test Louisiana law or burial practices.  (T.T. at 52-53).

      For the Abbey to sell caskets it would have to become a licensed funeral establishment. This course of action would require a layout parlor for 30 people, a display room for six caskets, and arrangement room, and signage.  (T.T. at 53-54).  The Abbey would also have to employ a full-time, state-licensed funeral director.  (T.T. at 54).  La. Rev. Stat. § 37:842(D)(1).  In addition, the Abbey would have to install "embalming facilities for the sanitation, disinfection and preparation of a human body."  La. Rev. Stat. § 73: 842(D)(3).

      The Federal Trade Commission's findings and actions with respect to the funeral industry provide salient evidence as well.  Funeral directors had traditionally been the only seller of

caskets; however, the Federal Trade Commission ("FTC") found that they were in engage in certain unfair practices which included non-disclosure of itemized price information (including that of caskets) and certain "bundling" requirements which meant that consumers were not allowed to chose individual products, rather they were forced to purchase a "packaged" deal. In response, the FTC stepped in and promulgated ruled to require disclosure of itemized price information and to allow consumers to purchase only the goods and services they want through a funeral director. (27 Fed. Reg. 42266 (Sept. 24, 1983); (T.T. at 63-64.)

Dr. David Harrington was offered as an expert on the economics of national funeral markets and the national market for third party casket sales. He testified that these regulations promulgated by the FTC which are known as the "Funeral Rule" required the disclosure of funeral homes' casket prices which were at times four times the wholesale price.(T.T. 64-65). As a result of these new rules, independently standing "brick and mortar" casket stores began to enter into the market. In 1994, the FTC recognized that funeral homes were frequently circumventing this new rule by charging casket handling fees for those who bought caskets from third party retailers. (T.T. at 65-66). The FTC amended the Funeral Rule to prohibit such fees. 59 Fed. Reg. 1592, 1604-05 (Jan. 11, 1994).

With the advent of the internet, consumers can now buy caskets from retailers across the country including Wal-Mart and online retailers such as Amazon.com. (T.T. at 67). This fact is salient in that Louisianians can indeed purchase from these out of state retailers who are not subject to the Act. Indeed, with the exception of an April 13, 2009 Cease and Desist Order issued to National Memorial Planning, the EFD Board has not issued any other Cease and Desist orders to out-of state casket retailers in the last ten years. (Doc. 73, Pretrial Order, Uncontested

Material Fact M, at 12). Thus, it is clear that Louisiana consumers are able to buy caskets from anyone out of state–from individuals that are not licensed funeral directors and companies that are not state-licensed funeral establishments. Equally clear is that they do not enjoy this right with respect to in-state retailers. In addition, the cost of these out of state caskets can be substantially less than most caskets offered by licensed funeral directors.

Furthermore, should such a Louisiana consumer purchase a casket from an out of state source, and intend to bury a corpse in it, that purchaser will ultimately be guided by and will pay for the services of a funeral director. That fee is generally in the range of $3000 to $4000 . (T.T. at 118 and 123); 16 C.F.R. § 453.2(b)(4)(iii)(C) (describing required disclosure for basic services fee). Thus, should any problem with an independently purchased casket present itself, a funeral director is available to fix such a problem. (T.T. at 119-122).

In addition, the following salient facts concerning Louisiana law and burials are uncontested:

1. There is no requirement to use a casket, container, or other enclosure for the burial of human remains.
2. There are no requirements for the construction or design of caskets.
3. There is no requirement for caskets to be sealed.
4. Individuals may construct and use their own handmade casket for a funeral in Louisiana.

Finally, it is uncontroverted that Louisiana is the only state in the Union that continues to enforce these kinds of laws. (T.T. at 79-80).

Clearly, the Act requires a seller of coffins to be a licensed funeral director operating through a licensed funeral home in order to legally sell caskets to the public. Equally clear, Plaintiffs have challenged these laws, and the Court must now determine whether they pass constitutional muster or not.

**Conclusions of Law**

The legal inquiry using the rational basis test is two-fold. The Court must determine (1) whether the regulation has a legitimate governmental purpose; and (2) whether there is a rational relationship between that purpose and the means chosen by the State to accomplish it. *Casket Royale, Inc. v. State of Mississippi*, 124 F. Supp. 2d 434, 437 (S.D. Miss. 2000)(Barbour, J) (funeral statutes and regulations prohibiting sale of caskets without licenses violated due process and equal protection clauses citing *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). In determining whether the regulation bears some rational relation to a legitimate state interest, the *Craigmiles* court noted:

> Even foolish and misdirected provisions are generally valid if subject only to rational basis review. As we have said, a statute is subject to a "strong presumption of validity" under rational basis review, and we will uphold it "if there is any reasonably conceivable state of facts that could provide a rational basis." *Walker v. Bain,* 257 F.3d 660, 668 (6th Cir. 2001). *See also Heller v. Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 125 L.Ed.2d 257 (1993). Those seeking to invalidate a statute using rational basis review must "negative every conceivable basis that might support it." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed. 2d 351 (1973).

*Craigmiles*, 312 F.2d at 223-24. The Court will now turn to this inquiry.

**Legitimate Governmental Purpose**

Defendants maintain that the casket law benefits the public by protecting the health, safety and welfare of its citizens through regulation of the funeral profession. (Doc. 73, Pretrial Order at 9). In essence, they maintain the Act is aimed at consumer protection and public health and safety. Furthermore, Defendants contend that intrastate economic protectionism constitutes a legitimate state interest.

Clearly, protection of consumers and their health and welfare serves the public welfare and as such constitutes a legitimate governmental interest. *Casket Royale,* 124 F. Supp. 2d at 438 citing *Turner Broadcasting System v. FCC,* 520 U.S. 180, 189-900 (1997) (finding consumer protection to be a legitimate governmental interest; *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 375-76 (1997) (finding health and safety to be a legitimate governmental interest); *Liquormart, Inc. v. Rhode Island* 517 U.S. 484, 502 (1996) (consumer protection); *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981)(health and safety). However, for the reasons assigned in its April 8, 2011 Order and Reasons, this Court rejects economic protectionism as a legitimate governmental interest in the context of the sale of coffins and thus will not consider this argument further. Accordingly, the focus of this Court's inquiry is whether there is a rational relationship between consumer protection and/or public health and safety and the relevant provisions of the Act.

### Rational Relationship between Purpose and Means Chosen to Accomplish Same

Defendants have pointed to several demonstrative issues that drive the proper choice of casket for a particular deceased person. These factors include (1) the size of the deceased,(2) the condition of the body, (3) the size of the burial space, and (4) in the instance of a full multi-use family tomb, the need for a biodegradable casket to avoid "blocking future use of the gravesite." (Doc. 92, Defendants' Post-Trial Memorandum at 5); (T.T., Testimony of Billy Henry, funeral director, at 104-107).  Thus, Defendants maintain that requiring funeral directors who are familiar with these factors to be the sole retailers for caskets in Louisiana is a rational method to accomplish the protection of consumers and the health and welfare of the public.  However, such a position is unsupported by the evidence.

### Consumer Protection

To begin, the FTC Funeral Rule demonstrates that Congress has found that consumer protection with respect to the cost of funeral items is not aided by a state-protected monopoly.  It is for this reason that the Funeral Rule was enacted and amended. ( T.T. at 64-65).  For example, when the FTC issued its Final Trade Commission Rule on September 24, 1982, it noted that the state regulations particularly in the area of price disclosure were likely to mirror the protective perspective of funeral directors.  47 Fed. Reg. at 42289.  "[I]t is clear that the FTC has found that there is a necessity in protecting consumers from the pricing practices of the funeral industry, especially in regard to casket sales."  *Casket Royale*, 124 F.Supp.2d at  440.  That court then noted that the Mississippi funeral statutes "restrict competition and limit casket sales to the licensed few, accomplishing just the opposite" of protecting the consumer.  *Id.*  In fact, the FTC

reviewed the Funeral Rule in 2008 and found that it was still necessary and re-enacted it. (T.T. at 80). Clearly, the Act does not protect consumers from higher prices.

Moreover, the fact that any Louisianian can purchase a casket on line without the "aid" of a funeral director results in the only persons being protected are the funeral directors of Louisiana and their coffers. The Act only applies to in-state sales. Other forms of distribution (such as delivery in Louisiana of containers purchased out-of-state, gift and home manufacture for personal use) are not prohibited. *See Peachtree Caskets Direct, Inc. v. State Board of Funeral Seri. of Georgia*, 1999 WL 33651794, *1 (N.D.Ga. Feb. 9, 1999). As stated in *Casket Royale*, 124 F.Supp.2d at 440, with respect to a Mississippi statute similar to the Act at issue here, "As a result of this requirement, consumers in Mississippi are offered fewer choices when it comes to selecting a casket. Consequently, there is less price competition among the sellers of caskets. Ultimately the consumer is harmed by this regulation as one is forced to pay higher prices in a far less competitive environment." *Id.* at 440. *See* (T.T. at 80) (state funeral regulations are anti-competitive in the sense that they restrict the choices of consumers). In addition, should Louisiana try to apply its funeral-licensure laws to out-of-state retailers (which apparently with only one exception, it has not), such actions could be unconstitutional as they would in effect attempt to control commercial activity occurring wholly outside the boundary of the state. *Granholm v. Heald,* 544 U.S. 460 (2005); *Healy v. Beer Institute, Inc.* 491 U.S. 324, 336 (1989); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (6th Cir. 2010).

In addition, the reality of the process is that if a deceased person is being buried in a cemetery, a funeral director will be involved (and will be charging for his or her services). Any concerns about the appropriateness of the casket can and will be addressed at that juncture. The

availability of casket retailers will not prevent funeral directors from continuing to dispense advice about size needs, odor concerns and the like.  *Craigmiles*, 312 F.3d at 226.

Furthermore, the concerns outlined by Defendants are not concerns that the Act actually addresses.  For instance,  Louisiana law does not require one to study grief or to have grief counseling training to become a licensed funeral director.  (T.T. at 51).  There is no requirement that a funeral-director apprentice learn about grief.  (T.T. at 52) Additionally, Louisiana does not require funeral directors to study caskets as part of their educational prerequisite or during the apprenticeship. (T.T. at 52).  Finally, the exam that prospective funeral directors must pass does not test any Louisiana-specific issues such as above-ground crypts.  (T.T. 52-53).  Thus, requiring potential casket retailers to become funeral directors has no rational relation to consumer protection as the Act itself does not address these issues.

Likewise, it is uncontested that there is no requirement for a person to be buried in a casket, container, or other enclosure for the burial of human remains.  There are no requirements in the Act concerning the construction or design of caskets.  "Because nothing prevents licensed funeral directors from selling shoddy caskets at high prices, the licensing requirement bears no rational relationship to increasing the quality of burial containers."   *Craigmiles*, 312 F.3d at 226.  Likewise, there is no requirement for caskets to be sealed.  Individuals may construct and use their own handmade casket for a funeral in Louisiana. Thus, the Act's prohibition of non-funeral directors engaging in retail sales of caskets has no rational basis in the reality of the law.

In essence, the concerns relied upon by Defendants for the proposition that there is a rational relationship between the Act and the government interest in consumer protection are actually aimed at customer service, which in and of itself is not a legitimate government interest.

14

*Casket Royale*, 124 F. Supp.2d at 439.  Defendants made much of the fact that Louisiana has unique issues as concerns its above-ground crypts and mausoleums; however, those concerns are not rationally related to the need to have a license.  There was no evidence adduced that in order to obtain a license, a potential funeral director is required to take a special course in Louisiana burial grounds or that such issues are contained in the testing for such a license.  Furthermore, customer service in that regard is far more likely to be at a higher level from a resident casket retailer than from a casket retailer in an internet transaction.  Service varies from funeral director to funeral director and from retail casket maker to retail casket maker.   For all of these reasons, Court concludes that the Act is not rationally related to any legitimate state interest with respect to consumer protection.

### Public Health and Safety

The Court finds no rational relationship between the Act and "public health and safety."  No evidence was presented to demonstrate that requiring the purchase of caskets from licensed funeral directors aids the public welfare.  As previously noted,  there is no requirement for a casket to be used in the burial of any individual in Louisiana, so there is no rational relationship between the Act and "health concerns" arising from a decomposing or contagious corpse.  Again, these issues are not addressed in the Act.  There simply is no rational relationship between health and safety of the public and the construction of and sale of a casket as demonstrated by the fact that these "concerns" with respect to coffins themselves are not included in  the requirements to become a licensed funeral director.  There are no requirements concerning the construction or design of caskets contained in the Act.  There are no requirements

concerning the seals for coffins contained in the Act. Rather, the portion of the Act that speaks to health and safety concerns are those with respect to training and facilities used for the embalming and the handling of bodies. Clearly, a person or company simply selling a receptacle will not be engaging in those activities and there is no need for such training for them.

Furthermore, Plaintiffs, as well as anyone who seeks solely to sell caskets on a retail basis, will not handle corpses. Plaintiffs simply seek to sell caskets. The requirements in the Act to install embalming facilities for the sanitation, disinfection and preparation of a human body at a location where the sale is to take place, La. Rev. Stat. §37:842(D)(1) and (3), have no rational relationship to the retail sales of caskets. The only rational explanation for this requirement is as a barrier to entry aimed against potential Louisiana retail sellers of caskets. Indeed, these requirements are inapplicable to the retail sellers to Louisiana consumers across the the United States. There is no rational basis to prohibit retail sales of caskets by non-funeral directors based on health and welfare concerns. *Craigmiles*, 312 F.3d at 225.

**Pre-Need Law**

Likewise, Defendants maintain that there is a rational relationship between consumer protection and Louisiana Pre-Need law. La. Rev. Stat. § 37: 861. That statute provides, *inter alia,* that only duly licensed funeral establishments can provide prepaid funeral services. This law aims to insure that either the merchandise or the funds paid are available at the time of need by requiring all funds paid for funeral merchandise on a pre-need basis to be placed into a special account or an insurance policy to be utilized at the time of the consumer's death to pay for such merchandise. Plaintiffs have stipulated that they are not challenging this pre-need

16

provision. They challenge only La. Rev. Stat. §§ 37:831(37), (41) and 37:842(A)-(C) contained in the general provisions of the Chapter concerning embalming and funeral directors. Plaintiffs are not seeking relief with respect to La. Rev. Stat. § 37:861. Nonetheless, Defendants contend that the pre-need law can only be enforced by limiting the sales to those individuals that are licensed and regulated by the Act in question, and that somehow, this fact should shield the other provisions.

Again, the Court finds that there is no rational basis in law to find that enforcement of the pre-need provisions are tied to the requirement that a casket must be sold by a funeral director from a funeral home. As it stands now, Louisianians can undertake the purchase of caskets, whether through a "pre-need" approach or at the time of need. If indeed the aim of the Act is to insure that pre-need requirements are met, clearly the pre-need law could be much more readily enforced as to resident casket retailers than against casket retailers on line.

In addition, clearly the language of the pre-need statutes explicitly applies to "anyone," which obviously would include non-funeral directors, and thus can be brought to bear against any person who transgresses the law. The plain language of Louisiana's funeral states, which divide licensure into Part I and pre-need into Part II, allows for a bright-line distinction between at-need casket sales and pre-need casket sales.

**Conclusion**

It is thus clear that Plaintiffs are entitled to declaratory relief against the enforcement of Louisiana's Embalming and Funeral Directors Act, La. Rev. Stat. Ann. § 37:831-:885 ("the Act"), and the practices and policies of the EFD Board which are unconstitutional as applied to

17

Plaintiffs as they deny Plaintiffs the ability to sell caskets at retail prices to the public without being licensed as required under the Act, specifically, La. Rev. Stat. §§ 37:831(37), (41) and 37:842(A)-(C). In sum, the arguments made by defendants are hollow:

1) The challenged law prohibits residents of Louisiana from selling caskets retail; however, any person living in Louisiana can purchase a casket on the internet.

2) There is no requirement that a casket be used in a burial.

3) There is no relation between the obtaining of a funeral license and the ability to manufacture and sell a casket.

4) The only protection afforded by the Act is the economic protection of the funeral directors which this Court has held not to be in and of itself a rational basis for the Act under the Constitution of the United States for the reasons stated in its previous order.

Thus, Plaintiffs have demonstrated that there is no rational relationship between requiring persons selling caskets to become funeral directors and to sell caskets only from funeral establishments thus violating Plaintiffs' constitution rights to Due Process. The provisions of the Act as they relate to the retail sale of caskets by persons other than funeral directors do not protect consumers; the prohibition against Plaintiffs' selling caskets does not protect the public health and welfare. The provisions simply protect a well-organized industry that seeks to maintain a strict hold on this business.

Likewise these laws violate of the Equal Protection Clause, since the Act in essence treats two distinct and different occupations as the same. The licensing scheme is not rationally related to public health and safety concerns. No other state in the Union continues this practice;

it is detrimental to the welfare of the consumers and does not protect the health and safety of the public. Accordingly,

**IT IS ORDERED** that judgment be entered in favor of St. Joseph Abbey and Mark Coudrain and against Paul "Wes" Castille, Oscar A. Rollins, Belva M. Pichon, Craig G. Gill, Andrew Hayes, Wall V. McKneely, Margaret Shehee, Kelly Rush Williams, and Louis Charbonnet, in their official capacities as members of the Louisiana State Board of Embalmers and Funeral Directors that:

1. La. Rev. Stat. § 37:831(37 ) is unconstitutional on its fact to the extent that it includes the selling of caskets within the definition of "funeral directing";

2. La. Rev. Stat. § 37:831(41) is unconstitutional as applied to the selling of caskets and by one who is not a state-licensed funeral director;

3. La. Rev. Stat. §§ 37:842(A)-(C) and the practices of the State Board as applied to Plaintiffs are unconstitutional.

**IT IS FURTHER ORDERED** that a permanent injunction is hereby **ENTERED** against Paul "Wes" Castille, Oscar A. Rollins, Belva M. Pichon, Craig G. Gill, Andrew Hayes, Wall V. McKneely, Margaret Shehee, Kelly Rush Williams, and Louis Charbonnet, in their official capacities as members of the Louisiana State Board of Embalmers and Funeral Directors prohibiting them from enforcing La. Rev. Stat. §§ 37:831(37), (41) and 37:842(A)-(C) and prohibiting enforcement of their regulations and policies based thereon.

**IT IS FURTHER ORDERED** that judgment be entered in favor of in favor of St. Joseph Abbey and Mark Coudrain and against Paul "Wes" Castille, Oscar A. Rollins, Belva M. Pichon, Craig G. Gill, Andrew Hayes, Wall V. McKneely, Margaret Shehee, Kelly Rush

Williams, and Louis Charbonnet, in their official capacities as members of the Louisiana State Board of Embalmers and Funeral Directors for attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) and (c).

**IT IS FURTHER ORDERED** that the proper amount of attorney fees to be awarded shall be determined by the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR 54.2.

**IT IS FURTHER ORDERED** that the proper amount of costs to be awarded shall be determined by the Clerk of Court pursuant to LR 54.3.

New Orleans, Louisiana, this 21st day of July 2011.

_____
**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**